# COURT OF APPEALS OF VIRGINIA

**Record No. 0359-25-1**

OATES ENTERPRISES II, LLC,
A VIRGINIA LIMITED LIABILITY COMPANY
v.
CITY COUNCIL OF THE CITY OF NORFOLK, VIRGINIA, ET AL.

Present: Judges AtLee, Chaney and Bernhard
Argued at Norfolk, Virginia

Opinion Issued August 11, 2026[*]

**FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK**
Mary Jane Hall, Judge

Kevin E. Martingayle (Bischoff Martingayle, P.C., on briefs), for appellant.

Adam D. Melita, Deputy City Attorney, for appellees.

**MEMORANDUM OPINION BY**
**JUDGE VERNIDA R. CHANEY**

After the City Council of the City of Norfolk revoked a special exception issued to Oates

Enterprises II, LLC ("Oates"), Oates sued the City of Norfolk and the City Council, alleging

violations of its substantive due process, procedural due process, and equal protection rights. The

circuit court sustained the City's demurrer as to all counts and the City Council's demurrer as to the

procedural due process and equal protection claims. The circuit court later granted summary

judgment to the City Council on Oates's remaining substantive due process claims. Oates appeals.

Finding no error, this Court affirms.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Oates was the owner of a building on Granby Street in downtown Norfolk, where a separate entity, Oates Food Services II, LLC, operated a restaurant and bar known as Scotty Quixx.[2] R. 728. The business was operated pursuant to a special exception, also known as a conditional use permit, issued to Oates.[3] R. 728-29, 759. Section 2 of the special exception imposed several conditions on the operation of the business. R. 759-68. As relevant here, section 2(*l*), the tax-compliance condition, required the business to "remain current on all food and beverage taxes," while section 2(s), the ABC-compliance condition, required the business to comply with all "requirements, limitations, or restrictions imposed by the Virginia ABC Commission." R. 762, 764. One of those requirements is the Mixed Beverage Annual Review ("MBAR"), which requires restaurants to report their alcohol and food sales to the ABC so the ABC can determine compliance with ABC regulations, most notably the requirement that food and nonalcoholic beverages amount to at least 45% of the gross receipts from the sale of mixed beverages and food. Code § 4.1-206.3. R. 859-60.

---

[1] When reviewing the circuit court's decision to sustain a demurrer, we accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Brooks-Buck v. Wahlstrom*, 304 Va. 470, 477 (2025). We may also consider documents referenced or attached to the complaint. *Faulknier v. Shafer*, 264 Va. 210, 213 (2002). A court considering a motion for summary judgment may consider "the pleadings, the orders, if any, made at a pretrial conference, [and] the admissions, if any, in the proceedings." Rule 3:20. When reviewing a grant of summary judgment, we apply the same standard as the trial court, "accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fauber v. Town of Cape Charles*, 79 Va. App. 660, 673 (2024) (quoting *Stahl v. Stitt*, 301 Va. 1, 8 (2022)).

[2] For clarity, we refer to the appellant as Oates and Oates Food Services II, LLC, as Scotty Quixx.

[3] There was some uncertainty about which entity held the special exception, but that issue is not part of this appeal. As the parties do, we will proceed as if Oates possessed the exception.

After a shooting outside a bar in downtown Norfolk in March 2022, a Norfolk City Council member proposed that the conditional use permits of downtown bars and restaurants be examined and those businesses "shut . . . down" for any noncompliance with the permit conditions. R. 735. Following another shooting in downtown Norfolk near the bar Legacy in August 2022, the Deputy City Attorney requested MBAR information from the ABC Commission for several downtown bars and restaurants, including Scotty Quixx. R. 735, 803, 809. The next day, the City Manager stated at a press conference that the City would review the conditional use permits of downtown businesses and require those businesses "[to] explain why . . . they should have the opportunity to do business on Granby Street." R. 735-36.

Around September 2022, the City Council amended Norfolk's zoning ordinances to impose stricter performance standards on businesses that sell alcohol. R. 737, 813-16. During the same period, the City and the City Council took enforcement action against several downtown bars and restaurants. The City Council revoked Legacy's conditional use permit based on its connection to the August 2022 shooting and later revoked California Burrito's conditional use permit for occupancy violations. The zoning administrator revoked Culture Lounge & Restaurant's zoning certificate for ABC violations, unpaid food and beverage taxes, and unauthorized entertainment. R. 737-38, 807-10, 817-20.

The City also initiated revocation proceedings against Scotty Quixx. On September 12, 2022, the City issued a statement proposing the revocation of a special exception. R. 738, 835-38. The statement alleged a discrepancy between the MBAR amounts submitted to the ABC and the meals tax reports submitted to the Commissioner of Revenue. R. 738-39, 836-38. In the City's view, the discrepancy meant that Scotty Quixx was necessarily in violation of the special exception in one of three ways. If the sales reported to the Commissioner of Revenue were inaccurate, Scotty Quixx had violated section 2(*l*) of the special exception, which required it to

pay all meals taxes. R. 838. Alternatively, if the sales reported to the ABC were inaccurate, Scotty Quixx had violated section 2(s), requiring it to comply with ABC requirements. R. 838. Finally, if both sets of numbers were inaccurate, Scotty Quixx had violated both sections. R. 838.

The statement triggered "discussions between the City and owners of Scotty Quixx." R. 739. On September 19, 2022, the City Attorney wrote in an email to the owners of Scotty Quixx, copying members of the City Council, that, although it was not one of the grounds for revocation, he believed there had been a shooting inside the restaurant in 2019. R. 739-40, 861. That statement was untrue. R. 739.

On September 21, 2022, Scotty Quixx submitted a Freedom of Information Act request to the City requesting all documents related to the proposed violations. R. 866. The City responded that the records "require[d] legal review before release" and that it would provide responsive records by October 7, under Code § 2.2-3704(B)(4) (allowing an extension if "[i]t is not practicably possible to provide the requested records" within five workdays). R. 866.

On September 27, 2022, Scotty Quixx submitted a written opposition to the proposed revocation. R. 871-74. It asked the City Council to defer action to allow more time to craft a defense and receive responses to its FOIA requests. R. 871. It also argued that the proposed revocation was arbitrary, capricious, and unfair and that the City violated its own ordinance by failing to explain the principles of law supporting the revocation. R. 872-74.

The City Council held a public hearing on the proposed revocation that same day. R. 740; Ex. 19. The City first presented information about Scotty Quixx's reporting discrepancies, asserting that Scotty Quixx was necessarily in violation of section 2(*l*), 2(s), or both. Ex. 19 at 1:30-8:50. After the City's presentation, counsel for Scotty Quixx moved the City Council to continue the hearing to allow it more time to prepare. Ex. 19 at 9:15-10:10. The City Council

did not respond to the motion, effectively denying it. Ex. 19 at 10:10-10:20. Counsel for Scotty Quixx then spoke against the proposed revocation, followed by counsel for Oates, claiming in part that Scotty Quixx was not responsible for any of the violence in downtown Norfolk. Ex. 19 at 10:20-28:00. During its rebuttal, the City falsely stated that there had been a murder inside Scotty Quixx in 2019. R. 740-41; Ex. 19 at 29:40-29:50. The City immediately clarified, however, that it "did not see a connection between the business operation of Scotty Quixx and that violent act that took place inside of it" and that the alleged murder was "not a part of this proposed revocation," which was about the reporting discrepancy. Ex. 19 at 29:45-30:20. Scotty Quixx's counsel asked to present surrebuttal "to correct the record," but the City Council denied the request. R. 741; Ex. 19 at 33:20-33:29. The City Council voted 5-2 in favor of revocation and adopted an ordinance effectuating the revocation. R. 741, 889-90; Ex. 19 at 33:40-34:40.

Oates subsequently filed suit in the Circuit Court of the City of Norfolk against the City and the City Council, alleging violations of its constitutional rights under both the United States and Virginia Constitutions. R. 1-27. The operative complaint is the second amended complaint, which asserted five counts relevant to this appeal.[4] R. 728-58. Counts I and II alleged that the revocation "was invalid, unreasonable, arbitrary, capricious, not fairly debatable and violated [Oates's] substantive due process rights" because the decision was driven by animus and unsupported by a rational basis. R. 745-49. Count III alleged that the revocation violated Oates's equal protection rights on the ground that the City Council had not revoked a special exception or conditional use permit for the types of violations alleged against Scotty Quixx. R. 749-51. Count IV alleged that the defendants violated Oates's procedural due process rights in several ways. R. 751-52. Count V alleged generally that the revocation violated Oates's

_____

[4] Oates also sued Scotty Quixx (as Oates Food Services) and its owners for breach of contract. R. 754-56. That claim is not relevant to this appeal.

constitutional rights because the basis of the revocation was inconsistent reporting by Scotty Quixx, not Oates. R. 752-53.

The City demurred to all counts, and the City Council demurred to Counts III, IV, and V. R. 995-1007. The circuit court sustained the demurrers after a hearing. R. 1135-36, 1140-42, 2127. Regarding the City's demurrer, the court concluded that the City Council's actions could not subject the City to liability because the City Council was not an agent of the City. R. 1135. Instead, the City's involvement was limited to legislative advocacy, and the court found "no legal support for the contention that those who advocate for legislative proposals that allegedly cause harm[] are liable when the governing body approves such proposals." R. 1135-36, 2127. As to the City Council's demurrer, the court concluded that Oates failed to plead an equal protection violation because it did "not allege that there were other businesses with similar reporting inconsistencies or that the City Council knew that there were other such businesses that it had treated differently." R. 1141. The court also found the process provided to Oates to be constitutionally adequate. R. 386-87, 1142. Finally, the court found Count V merely duplicative of other counts. R. 1142.

The case proceeded to discovery. In response to a request for admission, Scotty Quixx admitted that the sales amounts included in its MBAR reports were "the total amounts of all food and beverages sold at Scotty Quixx . . . *before* any applicable discounts to prices were applied." R. 1277-78 (emphasis added). Conversely, the sales amounts reported on its tax returns reflected sales "*after* any applicable discounts." R. 1277-78 (emphasis added).

The City Council moved for summary judgment on Counts I and II. R. 1197-98. Oates raised several procedural objections to the City Council's motion. R. 1317-18. The circuit court rejected those arguments and granted the City Council's motion after a hearing. R. 1664-74, 2282. After assuming without deciding that Oates presented probative evidence of

unreasonableness, the court found such evidence rebutted by the City Council's evidence establishing that its decision was "fairly debatable," entitling the City Council to summary judgment on Oates's substantive due process claims. R. 1669-73. This appeal follows.

ANALYSIS

I. Standards of Review

"A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Brooks-Buck v. Wahlstrom*, 304 Va. 470, 477 (2025) (quoting *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021)). "A [circuit] court's decision sustaining a demurrer presents a question of law [that] we review de novo." *Corzine v. Alexandria City Council*, 86 Va. App. 623, 629 (2026) (alterations in original) (quoting *Harris v. Kreutzer*, 271 Va. 188, 196 (2006)). "To survive a demurrer, 'a pleading must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."'" *Id.* (quoting *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013)). "[W]e may affirm an order sustaining a demurrer only on a ground that the defendant raised in the trial court." *Theologis v. Weiler*, 76 Va. App. 596, 604 (2023); *see also* Code § 8.01-273(A).

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023) (quoting Rule 3:20). We "review the application of law to undisputed facts de novo." *Id.*

## II. Oates's Equal Protection Claim

We begin with the circuit court's decision to sustain the demurrers as to Oates's equal protection claim.[5] Oates argues that the defendants violated its equal protection rights by revoking the special exception based solely on animus against Scotty Quixx, as a "class of one." Oates's claim fails, however, because Oates did not allege that similarly situated businesses received unequal treatment.[6]

The United States Constitution guarantees "the equal protection of the laws." U.S. Const. amend. XIV. The core of an equal protection claim is that the plaintiff "was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 238 (4th Cir. 2021). The Supreme Court of the United States has recognized "class of one" claims, "where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (holding that a complaint stated a "class of one" equal protection claim where a village arbitrarily sought an unnecessary 33-foot water easement from one resident despite seeking only 15-foot easements from all other residents).

As in *Olech*, "class of one" claims typically involve state action governed by "a clear standard against which departures, even for a single plaintiff, c[an] be readily assessed," as opposed to "discretionary decisionmaking based on a vast array of subjective, individualized

---

[5] We assume without deciding that Oates preserved its arguments related to the City's demurrer by not filing written objections to the circuit court's order. We note that "[f]ormal exceptions to rulings or orders of the court [are] unnecessary" and as long as the party made known to the court the actions it wished the court to take, "the absence of an objection shall not thereafter prejudice him on . . . appeal." Code § 8.01-384(A).

[6] Although the second amended complaint also alleges animus against "downtown Norfolk nightlife bars and restaurants with young and diverse clienteles" generally, we need not decide whether those broader allegations fit the class-of-one framework. R. 751.

assessments." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602-03 (2008). Since zoning decisions involve discretionary and individualized assessments, "[t]o establish a class-of-one claim, a person complaining of a zoning decision must . . . 'show an *extremely high degree of similarity* between themselves and the persons to whom they compare themselves.'" *SAS Assocs. 1, LLC v. City Council*, 91 F.4th 715, 722 (4th Cir. 2024) (emphasis added) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).[7]

Oates failed to meet that high bar in its second amended complaint. Although Oates alleged that the "City Council ha[d] not revoked a business's special exception or conditional use permit for a single reporting inconsistency," "meals tax delinquency," or "MBAR reporting issue or violation," it did not identify any specific businesses known to the defendants to have engaged in such conduct. R. 750. Oates did not allege, for example, that there were other businesses with similar reporting discrepancies to which the defendants gave more lenient treatment. The lack of precedent alone does not establish discrimination. In fact, the specific allegations in the second amended complaint demonstrate that the defendants did not treat Scotty Quixx differently. The only other businesses identified in the complaint are those whose permits were revoked. R. 737. In other words, Oates fundamentally failed to plead unequal treatment, which is the gravamen of

---

[7] Some federal circuits have held that, even when a plaintiff must identify a similarly situated comparator to prove its case, it is not required to identify the comparator by name in the complaint. *See Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015) (affirming the dismissal of a complaint because the allegations established that state officials acted rationally). Even assuming that proposition applies here, Oates did not merely fail to name a comparator; it failed to allege that any similarly situated business received more favorable treatment.

an equal protection claim.  Accordingly, the circuit court correctly sustained the demurrers as to Count III.[8]

### III.  Procedural Due Process

We now turn to Oates's procedural due process claim, which the circuit court similarly disposed of on demurrer.  Both the United States and Virginia Constitutions prohibit the government from depriving a person of property "without due process of law."  U.S. Const. amend. XIV, § 1; Va. Const. art. I, § 11.  Virginia courts have generally regarded these two provisions as coextensive.  *See McNally v. Va. DMV*, 80 Va. App. 483, 509 (2024); *Fairfax Cnty. Sch. Bd. v. S.C.*, 297 Va. 363, 375 n.7 (2019).  Therefore, we will treat the analysis the same under both constitutions.

This Court conducts the procedural due process analysis in two steps.  *McNally*, 80 Va. App. at 510 (quoting *KSS One, LLC v. Henrico Cnty.*, 76 Va. App. 770, 782 (2023)).  At step one, we ask whether the party alleging a violation had a property interest that triggers the due process requirement.  *Id.*  As the defendants do not argue otherwise, we will follow the circuit court's lead and assume without deciding that Oates possessed a property interest in the special exception.  R. 386.

At step two, we ask whether the applied procedures satisfied due process.  *McNally*, 80 Va. App. at 510 (quoting *KSS One*, 76 Va. App. at 782).  "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."  *Harvey v. Commonwealth*, 297 Va. 403, 417 (2019) (alteration in original)

---

[8] Similar to Count III, Count V did not identify an independent constitutional right or cause of action.  It instead alleged that the revocation was unconstitutional because Scotty Quixx, rather than Oates, submitted the disputed reports, thereby repackaging the substantive due process and equal protection theories asserted in Counts II and III.  R. 752-53.  The circuit court did not err in sustaining the demurrers to Count V, which Oates agrees it correctly found duplicative of its other counts.

(quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring)). "Rather, it is 'flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Supreme Court of the United States articulated the following factors for courts to balance when considering a procedural due process claim:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). However, in general, "[t]he core of due process is notice and the opportunity to be heard before an impartial tribunal." *Harvey*, 297 Va. at 417.

The City issued a statement of proposed revocation on September 12, and Oates received a copy before the September 27 City Council hearing. R. 738, 886-87. That statement identified the reports at issue, the discrepancy between them, sections 2(*l*) and 2(s) of the special exception and the retail licenses statute, Code § 4.1-206.3. R. 836-38. The statement explained that, depending on which reported figures were accurate, Scotty Quixx had violated section 2(*l*), section 2(s), or both. Scotty Quixx and Oates each appeared through counsel, submitted written objections addressing that reporting-discrepancy theory, and argued against revocation. R. 871-87; Ex. 19 at 10:20-28:00. The allegations, therefore, demonstrate that Oates had actual notice of the case it was required to meet. The statement's identification of alternative grounds did not make that notice constitutionally inadequate. Nor did the statement omit the concise explanation of legal principles required by the ordinance on which Oates relies on.

The allegations also do not establish that the denial of a continuance deprived Oates of a meaningful opportunity to be heard. Although Oates alleged that FOIA requests remained

outstanding, the complaint did not identify what particular responsive material was necessary to answer the reporting discrepancy or explain how the absence of that material prevented Oates from presenting its position. Both Oates and Scotty Quixx submitted written opposition and appeared through counsel at the hearing. Oates did not allege facts showing that the probable value of a continuance rendered the procedures used constitutionally inadequate.

During rebuttal, the City incorrectly stated that a murder had occurred inside Scotty Quixx. However, it immediately disclaimed any connection between the alleged act and the operation of the business and expressly stated that the incident was not part of the proposed revocation. Ex. 19 at 29:45-30:20. In light of that express disclaimer—and Oates's and Scotty Quixx's earlier presentations concerning the absence of any connection to downtown violence— the complaint does not establish that the denial of surrebuttal created a constitutionally significant risk of an erroneous deprivation.

Finally, Count IV alleged, upon information and belief, that the City Council reviewed material that was not publicly available. The complaint did not identify that material, allege facts showing that the City Council relied on it, or explain how access to it would have altered Oates's response. That conclusory allegation did not state an additional procedural due process violation. Accordingly, the circuit court did not err in sustaining the demurrers to Count IV.

IV. Oates's Remaining Claims Against the City

We now turn to Counts I and II of the second amended complaint as applied to the City. The circuit court granted the City's demurrer on those counts after concluding that the City Council was not the City's agent. R. 1135-36. Oates does not contend on appeal that the City is liable because the City Council decided to revoke the special exception. Rather, Oates argues that the City's actions leading to the vote violated Oates's constitutional rights.

- 12 -

If we set aside the City Council's actions, however, Oates's remaining counts against the City fail. Although Oates asserted that it "provided more than enough factual allegations to support its claims against the City," the few examples Oates provides in its opening brief seem to pertain to the procedural due process and equal protection claims we have already considered and rejected. Formally, Count I of the second amended complaint alleged that "[t]he revocation was invalid," while Count II alleged that the "City Council's decision was invalid." R. 745, 747.

Fundamentally, both claims challenged the City Council's decision to revoke the special exception. The only connection to the City is that the City advocated for the City Council's decision. Although Oates relies on the actions and statements of City employees leading up to the vote, the constitutional deprivation alleged in Counts I and II was the revocation of the special exception. That deprivation occurred only when the City Council enacted the revocation ordinance. The City employees identified in the complaint advocated for revocation and provided information to the City Council, but they lacked the authority to revoke the exception themselves.

Oates's reliance on *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), does not cure that defect. Those cases recognize municipal liability under 42 U.S.C. § 1983 when the execution of a municipality's own policy or custom—or a decision by an official possessing final policymaking authority for the municipality—causes a constitutional injury. Here, however, Oates did not allege facts showing that the City officials who advocated for revocation possessed authority to revoke the special exception or otherwise establish final policy on that matter. The alleged deprivation resulted from the City Council's legislative vote, not from an official policy or decision attributable to City employees. We therefore affirm the circuit court's decision to sustain the City's demurrer.

## V. Oates's Remaining Claims Against the City Council

Finally, we turn to the circuit court's decision to grant summary judgment in the City Council's favor on Counts I and II. First, we reject Oates's claim that the City Council's summary judgment motion failed to comply with the Rules of the Supreme Court of Virginia. That motion consisted of two unnumbered paragraphs stating that the City Council moved for summary judgment "based upon the facts established by the pleadings," the circuit court's prior orders, previous testimony and exhibits, Scotty Quixx's admissions during discovery, "and the provisions of applicable law" as further explained in a contemporaneously filed memorandum in support of the City Council's motion. R. 1197, 1283-1307.

In Oates's view, the motion violated Rule 1:4(d), which provides that "[e]very pleading must state the facts on which the party relies in numbered paragraphs, and it is sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 1:4(d). Oates is correct that Rule 3:18(a) states that "[a]ll motions in writing . . . are pleadings." The significance of that statement to Rule 1:4 is unclear, given that most subsections of Rule 1:4 refer only to pleadings while Rule 1:4(*l*) refers to "pleading[s], motion[s] or other paper[s]," suggesting that pleadings and motions may not be equivalent under Rule 1:4. *See Turner v. Commonwealth*, 295 Va. 104, 110 (2018) (explaining that, when a drafter "uses two different terms," those terms are "presumed to mean two different things").

Even assuming Rule 1:4(d) applies to a motion for summary judgment, the City Council's motion substantially complied with it. The motion expressly identified the pleadings, prior orders, previously admitted testimony and exhibits, Scotty Quixx's discovery admissions, and the contemporaneously filed supporting memorandum on which it relied. R. 1197, 1283-1307. The supporting memorandum set out the asserted material facts and governing legal

- 14 -

principles in detail. Taken together, those filings informed Oates of the basis for the motion, and Oates filed a detailed opposition addressing that basis.

Next, Oates contends alternatively that (1) the fairly debatable standard is an affirmative defense that the City Council failed to claim in its answer; or (2) even if not generally an affirmative defense, the City Council's representations made it an affirmative defense in this case. We reject both arguments.

Legislative "actions are presumed correct."[9] *Byrne v. City of Alexandria*, 298 Va. 694, 702 (2020). "This presumption of legislative validity is a presumption of reasonableness." *Town of Leesburg v. Giordano*, 280 Va. 597, 606 (2010). "Legislative action is reasonable if the matter in issue is 'fairly debatable.'" *Byrne*, 298 Va. at 702 (quoting *Norton v. City of Danville*, 268 Va. 402, 409 (2004)). "An issue is fairly debatable 'when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions.'" *Id.* (quoting *Norton*, 268 Va. at 409).

When determining whether an issue is fairly debatable, Virginia courts apply a burden-shifting framework. First, the party challenging the legislative action must present "probative evidence of unreasonableness." *Giordano*, 280 Va. at 606 (quoting *Bd. of Supervisors v. Robertson*, 266 Va. 525, 533 (2003)). This evidence must then "be met by some evidence of reasonableness." *Id.* (quoting *Robertson*, 266 Va. at 533). If the evidence of reasonableness makes the question fairly debatable, the court will sustain the legislative action. *Id.*

---

[9] Oates argues for the first time in its reply brief that the revocation proceeding was quasi-judicial rather than legislative. In the circuit court, however, Oates treated the revocation as a legislative action and did not raise this quasi-judicial argument.

Since Oates did not present its quasi-judicial characterization to the circuit court, we do not consider that argument on appeal. *See* Rule 5A:18.

The fairly debatable standard has been well established for decades and often applied. *See, e.g.*, *Bd. of Supervisors of Fairfax Cnty. v. Snell Constr. Corp.*, 214 Va. 655, 659 (1974).[10] "An 'affirmative defense' is a 'defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, *even if all the allegations in the complaint are true*.'" *Brown v. Va. State Bar*, 302 Va. 234, 252 (2023) (alteration in original) (emphasis added) (quoting *Affirmative Defense*, *Black's Law Dictionary* (11th ed. 2019)); *see also Williams v. Commonwealth*, 57 Va. App. 341, 352 (2010) (explaining that an affirmative defense "raises 'a separate issue which may carry a separate burden of proof'" (quoting Ronald J. Bacigal, *Criminal Procedure* § 17.28 (2007-2008 ed.))).

Here, Oates alleged that the revocation was unreasonable and not fairly debatable. R. 747. The City Council's argument refutes that allegation; it does not raise a separate issue. Properly understood, the fairly debatable standard is an evidentiary standard that replaces the normal standard of preponderance of the evidence applicable to civil cases. *See Ames v. Painter*, 239 Va. 343, 348 (1990) (explaining that the fairly debatable standard relieves the governing body of the need "to persuade the fact-finder of reasonableness by a preponderance of the evidence"). In this case, the standard governs whether Oates proved that the legislative action was unreasonable; it does not introduce a separate matter that would defeat Oates's claim even if Oates proved every element of that claim. Oates itself alleged that the City Council's decision was not fairly debatable, and the City Council denied those allegations in its answer. R. 747, 1014-16.

We also reject Oates's argument that the City Council waived its fairly debatable argument under the law of the case or approbate and reprobate doctrines. Under the "law of the

---

[10] The authorities Oates cites do not treat the fairly debatable standard as an affirmative defense.

- 16 -

case" doctrine, an unchallenged court ruling at one stage of litigation binds the parties at subsequent stages, even if incorrect. *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008). The doctrine's inapplicability is clear. The circuit court did not hold that the fairly debatable standard is an affirmative defense; it held precisely the opposite, explaining that the "City Council's evidence of reasonableness to oppose [Oates's] evidence of unreasonableness relates directly to [Oates's] cause of action." R. 1667.

The approbate and reprobate doctrine, which prohibits a litigant from "taking successive positions . . . that are either inconsistent . . . or mutually contradictory," also does not apply here. *AV Auto., L.L.C. v. Bavely*, 85 Va. App. 559, 577 (2025) (quoting *Amazon Logistics, Inc. v. Va. Emp. Comm'n*, 304 Va. 107, 114 (2025)). "Courts do not apply the approbate-reprobate doctrine at a 'granular level.'" *Id.* (quoting *Commonwealth v. Holman*, 303 Va. 62, 74 (2024)). "Litigants cannot '"blow[] hot and cold" depending on their perceived self-interests.'" *Amazon*, 304 Va. at 115 (alteration in original) (quoting *Babcock & Wilcox Co. v. Areva*, 292 Va. 165, 204 (2016)). "They must 'elect a particular position' and are thereafter confined" to that position. *Id.* (quoting *Matthews v. Matthews*, 277 Va. 522, 528 (2009)). Accordingly, approbating requires a "formal[] or authoritative[]" declaration of the litigant's position. *Bavely*, 85 Va. App. at 577 (quoting *Holman*, 303 Va. at 73).

Any inconsistency between the City Council's appellate argument and its argument below is irrelevant, as we may affirm the lower court based on purely legal arguments not raised (or waived) by the appellee below. *See, e.g.*, *Collins v. Commonwealth*, 297 Va. 207, 212 n.1 (2019) ("Under the right-result-different-reason doctrine, an appellee may assert for the first time on appeal a purely legal ground for upholding a challenged judgment."). Moreover, the City Council's uncertain, equivocal position in the circuit court does not amount to approbating and reprobating. In its memorandum in support of summary judgment, the City Council recited the

legal standard applicable to affirmative defenses.  R. 1293.  Following that recitation, the City Council wrote that it was "asserting the judicially-created defense of submitting evidence to support a finding that the decision to revoke the Special Exception was 'fairly debatable.'"  R. 1294.  At the summary judgment hearing, the attorney for the City Council alternately stated, "I don't think it is an affirmative defense either," "I didn't call it an affirmative defense," "I think it is fair to characterize [the standard] as a judicially creat[ed] affirmative defense," "[m]aybe that's not an official type of affirmative defense that needs to be pled," "I regard it as a form of defense, but I don't think literally speaking it's [an affirmative defense]," and "what we're asking is really not an affirmative defense."  R. 2294-97.  In short, the City Council's characterization of the fairly debatable standard was imprecise.  Its only definitive position was that it had not waived its argument.  As a general rule, "a concession of law is not binding on a court."  *Holman*, 303 Va. at 75.  On this record, we cannot conclude that the approbate and reprobate doctrine required the circuit court to treat the fairly debatable standard as an affirmative defense.

Finally, we turn to the merits of the City Council's motion for summary judgment.  As we stated previously, when assessing whether a legislative action is reasonable, "[c]ourts are not concerned with the motives" of the members of the legislative body "but in the results of their action."  *Blankenship v. Richmond*, 188 Va. 97, 105 (1948).  Furthermore, we are not confined to the information actually known to the legislative body.  *Indus. Dev. Auth. v. La France Cleaners & Laundry Corp.*, 216 Va. 277, 282 (1975).  Rather, we "must consider all competent evidence adduced at trial concerning facts and circumstances existing at the time the legislative action was taken."  *Id.*  Indeed, "misrepresentations of facts and circumstances made before a legislative body will not invalidate legislative action if the evidence shows that any facts and circumstances existing at the time it was taken were sufficient to sustain it."  *Id.*

Oates's special exception required that it comply with all "requirements, limitations, or restrictions imposed by the Virginia ABC Commission." R. 764. For purposes of its retail license, the ABC required Scotty Quixx to report its alcohol and food sales to gauge compliance with Code § 4.1-206.3. R. 860. During discovery, Scotty Quixx admitted that the sales it reported to the ABC did not reflect any discounts. R. 1277-78. Christopher Johnson, an owner of Scotty Quixx, testified to a concrete illustration of the reporting practice. If Scotty Quixx sold a plate of nachos for ten dollars but discounted it to five dollars during a happy-hour promotion, Scotty Quixx reported the full ten-dollar amount to the ABC while reporting and paying tax only on the five dollars actually collected. R. 1272-73. Reporting undiscounted list prices as sales is inconsistent with Code § 4.1-206.3, which requires sales of food and nonalcoholic beverages to "amount to at least 45 percent of the *gross* receipts from the sale of mixed beverages and food." Code § 4.1-206.3(A)(1) (emphasis added).[11] Because "gross receipts" ordinarily means amounts received rather than undiscounted list prices, the City Council could reasonably view a report keyed to the ten-dollar list price, rather than the five dollars actually collected, as not reflecting the amount contemplated by Code § 4.1-206.3(A).

Oates points to testimony that no ABC violation was ever charged or found and that the City's own tax-compliance witness declined to draw any conclusion of wrongdoing from the discrepancy alone. R. 1223, 1230, 1233-34, 1254-55. However, the fairly debatable standard does not require the City Council to await a formal ABC finding before acting on undisputed reporting practices; it requires only that the record permit reasonable people to disagree about whether those practices violated section 2(s). In light of that admission and the reporting

---

[11] Code § 4.1-206.3(A)(1) was amended effective July 1, 2026. It now provides: "Such license may be granted only to persons who operate a restaurant that complies with the food-to-beverage ratio provisions set by Board regulation pursuant to § 4.1-111." *See* 2026 Va. Acts ch. 719.

- 19 -

discrepancy, it was reasonable for the City Council to conclude that Scotty Quixx violated section 2(s) of the special exception.[12] Once the City Council determined that Scotty Quixx had not complied with the conditions of the exception, it was reasonable to revoke the exception, which was granted "subject to the . . . conditions." R. 759. Accordingly, the circuit court properly granted summary judgment.

CONCLUSION

For these reasons, this Court affirms the circuit court's judgment.

*Affirmed.*

---

[12] We do not decide whether Scotty Quixx's reporting practice in fact violated Code § 4.1-206.3 or ABC regulations, a question no agency has resolved. We hold only that the undisputed discrepancy made the City Council's revocation decision fairly debatable.